HOLMES, Retired Appellate Judge.
Quality Living, Inc., and Leonore Cooper appeal from a summary judgment entered in favor of the State Department of Public Health (Department).
Quality Living is an assisted living facility (ALF),[1] and Leonore Cooper is the sole owner and operator of that facility. At the outset we would note that the Department and Quality Living have been involved in previous state and federal litigation, involving some of the same issues raised by Quality Living in the instant appeal. Therefore, in order to gain a better understanding of the issues at hand, this court deems it necessary to narrate the facts and the events that give rise to the present action.
The Department initially issued Quality Living a provisional license in 1985. Over a one-year period, the Department conducted approximately ten inspections of Quality Living’s facility.[2] According to the Department, *1023 some of these inspections were prompted by complaints that the Department had received about Quality Living’s operations, while others were just normal regulatory inspections. We would note that in addition to inspecting the actual physical facility, the inspectors also have a duty to assess the residents for the purpose of determining whether their health care needs are being met.
In any event, the inspections revealed that Quality Living had violated a number of the State Board of Health rules, including housing residents whose personal health care needs exceeded the level of care that an ALF is authorized to provide. As a result, following an administrative hearing on February 22, 1990, the Department revoked Quality Living’s license.
Quality Living appealed to the Circuit Court of Montgomery County, contending that the Department’s rules regarding resident eligibility were discriminatory and that such rules violated the federal Fair Housing Act. Specifically, Quality Living contended that the residents, regardless of their physical and mental condition, should have been able to decide where they wanted to live.
As a result of that appeal, the Department and Quality Living entered into a consent agreement, which required Quality Living, among other things, to discharge certain residents who, the Department determined, were ineligible to remain at Quality Living because of their need for advanced care. The Department, in turn, agreed to issue Quality Living a regular license once Quality Living had complied with the terms of the consent agreement.
The trial court entered a consent judgment on February 12,1992, which incorporated the settlement agreement. The consent judgment required that the Department conduct a follow-up inspection by February 28, 1992, to determine if Quality Living had resolved its deficiencies.
After conducting a follow-up inspection, the Department learned that Quality Living had not complied with the consent judgment because it had failed to discharge two of the ineligible residents. Therefore, the Department did not issue Quality Living a license. On May 26, 1992, one of the ineligible residents, through her brother and next friend, filed a complaint in the United States District Court for the Middle District of Alabama. In essence, the resident challenged the Department’s eligibility rules, contending that the rules violated the federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3631 (1991), as well as the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1991). The resident also named Quality Living as a defendant in the suit. Wé noté that at some point during the pendency of the federal litigation, the Department voluntarily issued Quality Living a provisional license to prevent Quality Living from being totally unregulated.
On September 30, 1994, the federal court entered a memorandum opinion and order in favor of the Department, finding that the Department’s eligibility rules did not violate the FHA or the ADA. The court stated the following in its order:
“The undisputed, legitimate interest of the [Department] is to ensure the safety of ALF residents by preventing residents requiring greater levels of care than ALFs are licensed to give from residing at ALFs.... The court finds that to require the Department to reasonably accommodate Mrs. O’Neal by allowing her to remain at Quality Living would undermine the basic purpose of the Department regu-lation_”
O’Neal v. Alabama Dep’t of Public Health, No. 92-D-633-N, slip op. at 12 (M.D.Ala. September 30, 1994) (citations omitted). The ineligible resident, through her brother and next friend, appealed. However, the resident died, and the appeal was, thus, rendered moot.
In December 1994 Quality Living once again applied to the Department for a license, since its provisional license had expired. On March 28, 1996, several members of the Department staff made an unannounced visit to Quality Living for the purpose of conducting an inspection to determine if Quality Living was in compliance with *1024 the State Board of Health rules. The staff was accompanied by Marie Tomlin, the State Ombudsman, an advocate for the aging, who is employed by the Alabama Commission on Aging.
When the staff arrived at Quality Living on March 28, 1995, Cooper, the owner, was not present. According to one of the staff members, Cooper indicated in a telephone conversation that she did not wish for the Department staff to conduct the inspection in her absence.[3] The Department staff left Quality Living without conducting the inspection.
On March 29, 1995, several of the Department staff made another unannounced visit to Quality Living for the purpose of conducting an inspection. Cooper was present when the Department staff arrived. However, she requested that the Department staff “wait” until she contacted the family members of the residents to obtain permission for the Department staff to perform assessments on the residents. Cooper reminded the Department staff that she had several letters from family members who opposed the assessments. In fact, one of the family members called Quality Living and instructed Cooper not to allow the Department staff to question or to assess his relative. Another resident indicated in Cooper’s presence that she did not want to talk to the Department staff. As a result, the Department staff left Quality Living again without conducting an inspection. According to the Department, Cooper had been urging the residents and their family members not to talk to the Department staff or to allow the Department staff to conduct assessments.
On April 11, 1995, the Department’s attorney informed Quality Living’s attorney that the Department would still consider issuing Quality Living a license provided Quality Living grant the Department full access to conduct an unannounced survey, which would include “unimpeded” access to the residents of the facility.
Quality Living’s attorney replied that Cooper was “ready, willing, and able to have an inspection of her facility and records.” However, the attorney reiterated that “the residents and families object to ... assessments.” The Department did not regard Cooper’s response as “adequate or in good faith.”
On May 5, 1995, the Department notified Cooper that it was denying Quality Living’s request for licensure. The pertinent part of the letter reads as follows:
“This is to advise you [Cooper] that your application for licensure to operate Quality Living as an assisted living facility is hereby denied, pursuant to Section 22-21-23 of the Code of Alabama. On March 28, and March 29, 1995, our agency attempted unsuccessfully to survey Quality Living for compliance with the assisted living facility rules. Our surveyors were denied unimpeded access to the facility, its residents, and its records so that said surveyors were unable to conduct a survey on either date. Despite inquiry made through your attorney, our agency has been unsuccessful in securing assurance that unimpeded access will be provided in future surveys. Therefore, your application is denied on grounds that you have not shown the ability to comply with the rules for assisted living facilities.”
“You may request a hearing on the denial of [a] license by filing a written notice of appeal with the Department of Public Health’s General Counsel and by filing a copy of the notice of appeal with the Director, of the Division of Licensure and Certification. Such appeal must be filed within fifteen days of the date of this letter, or else the right of appeal shall be waived. Chapter J¡.20-1-3 of the Alabama Administrative Code sets forth the agency’s rules for contested case hearings.”
(Emphasis added.) The Department sent this letter to Cooper at Quality Living, by certified mail, return receipt requested. The return receipt was signed by an employee of *1025 Quality Living. The Department simultaneously sent Quality Living’s attorney a copy of the letter. Quality Living failed to request an administrative hearing to challenge the Department’s denial of its license application and thereby waived its right to appeal.
On August 29, 1995, the Department filed a complaint, seeking injunctive relief pursuant to § 6-6-503, Ala.Code 1975. Specifically, the Department requested that the trial court enjoin Quality Living from further operation as an ALF. Quality Living and Cooper filed an answer and a counterclaim, asserting various claims under the United States Constitution, the Alabama Constitution, the FHA, the ADA, and the federal Rehabilitation Act.
The Department filed a motion for a summary judgment; a brief in support of its motion; and other supporting documentation, including numerous exhibits and affidavits. Quality Living responded with a brief in opposition.
On January 9, 1997, the trial court, following a hearing, granted the Department’s summary judgment motion. The trial court further ordered Quality Living to discharge all its residents and to cease all operations of Quality Living within 45 days from the date of the order.
Quality Living and Cooper appeal.
On appeal, Quality Living, among other things, contends that it presented substantial evidence showing that the Department’s refusal to issue it a license was an act of retaliation. Specifically, Quality Living contends that the Department retaliated against it because of its objections to the Department’s procedure of assessing residents. Quality Living characterized the assessments as unconstitutional strip-searches of the residents’ body cavities.
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d at 684.
. In support of its motion for a summary judgment, the Department provided the affidavit testimony of Rick Harris, the Director of Licensure and Certification. Harris, who testified about the Department’s purpose and procedure for assessing residents, stated the following in his affidavit,' in pertinent part:
“8. There are several tasks that must be accomplished during a survey of an assisted living facility. Among these are: ... interviews with and observations of facility residents, which may include general assessments of the conditions of the facility’s residents, undertaken to determine whether particular residents are eligible for continued admission in an assisted living facility, to determine whether the facility’s records accurately reflect the resident’s condition, and to determine whether the resident is being adequately cared for. When necessary, a more detailed nursing assessment of a resident’s condition may be undertaken by a registered nurse surveyor, when, in the nurse’s judgment, a detailed assessment is necessary to determine the resident’s condition or the adequacy of care. It is our firm and inviolable policy that such assessments be conducted with due regard for the privacy and dignity of the residents. Any assessments involving private areas of the body such as a skin assessment or examination of pressure sores or other injury on the buttocks or genitalia may be conducted only by physicians or registered nurses. They should he conducted in a private area not subject to view by other residents. Resident assessment is essential if the Department is to effectively monitor the quality of care in assisted living facilities.”
*1026 The Department also provided documentation of the prior state and federal litigation to show that the Department had no reason to retaliate or to discriminate against Quality Living. The previous litigation resolved that the Department’s rules did not violate the FHA or the ADA.
This court finds it interesting that Quality Living has claimed that the Department has retaliated against it, especially since the Department has provided Quality Living with numerous chances to comply with its rules. If there whs, indeed, any retaliation, it would appear that Quality Living retaliated against the Department because Quality Living did not agree with the Department’s rules.
We would note that Quality Living, in its brief in opposition to a summary judgment, as well as in its brief on appeal, refers to testimony and exhibits which are not included in the record on appeal. Quality Living strongly contends that the Department conducted illegal strip-searches on the residents. However, there is nothing in the record to support these contentions. It is well-settled law that “[ejvidence or assertions of fact contained in the briefs of the parties, but not included in the record presented on appeal, may not be considered by this court.” Palmer v. Bentley, 634 So.2d 559, 560 (Ala.Civ.App.1994). Thus, Quality Living failed to present any evidence to support its egregious allegations.
In any event, the Department strongly argues that Quality Living waived its right to appeal when it failed to request an administrative hearing to dispute the Department’s denial of its application for licen-sure. We agree. Quality Living had every opportunity to request an - administrative hearing regarding the denial of its application for licensure. As noted previously, the Department-sent Quality Living a certified letter, return receipt requested, disclosing the fact that it would not grant Quality Living a license and that Quality Living could request an administrative hearing within 15 days from the date of the letter. The return receipt was signed by an employee at Quality Living. The Department simultaneously sent a copy of the letter to Quality Living’s attorney. On appeal, Quality Living contends that it did not receive the letter. We find this defense to be without merit.
It is well settled that proof of actual receipt of such notice is not required because there is a presumption that if a letter has been properly addressed and stamped with sufficient postage and has not been returned to the sender whose address is shown on the envelope, then it was received by the addressee. Ford Motor Credit Co. v. State Farm Ins. Co., 628 So.2d 937 (Ala.Civ.App.1993). As stated previously, there is sufficient evidence in the record to indicate that Quality Living received the letter.
In light of the above, we find that the trial court did not err in granting the Department’s summary judgment motion. Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
YATES, J., concurs in the result.

. ALFs are considered by definition to be residential facilities that accommodate the elderly. ALFs provide residents with room; board; laundry service; and personal assistance with daily activities such as bathing, dressing, shaving, food preparation, shopping, managing money, self-administration of medications, and recreational/leisure activities. See Ala. Admin. Code § 420-5-4.01(2)(k).

. Pursuant to Ala.Code 1975, §§ 22-21-20 through -33, the Department is a governmental entity or branch of the State of Alabama that is required to license and to regulate a broad array of health care facilities, including ALFs, for the *1023 purpose of ensuring safe and adequate treatment for the residents of such facilities.

. We would note that according to Ala. Admin. Code § 420-5-4.05(2)(a)(2), whenever the administrator of an ALF is absent from the facility, a staff person must be authorized to act for the administrator in her absence. In the instant situation, Cooper did not appoint anyone to act in her stead.